IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


911 RESTORATION INC.,

            Plaintiff,

      v.

EUGENE WELDERS SUPPLY CO. d/b/a
National Extinguisher Service, an Oregon
Corporation, and JEANNETTE GRIESE, an
individual,

            Defendants.

Case No. 3:25-cv-01740-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff 911 Restoration Inc. ("911 Restoration") filed this action against Defendants Eugene Welders Supply ("Eugene Welders Supply" or "National Extinguisher Service") and Jeannette Griese ("Griese") for breach of contract and quantum meruit. (Compl., ECF No. 1-2.) Defendant Griese, a Bureau of Land Management ("BLM") employee, removed the case from state court pursuant to the federal officer removal statute, 28 U.S.C. § 1442. (Not. Removal, ECF No. 1.)

Griese now moves to dismiss 911 Restoration's claims against her for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Def. Griese's Mot.

PAGE 1 – OPINION AND ORDER

Dismiss ("Mot. Dismiss") at 6, ECF No. 13.) For the reasons explained below, the Court grants Griese's motion to dismiss.

## BACKGROUND

On or about August 22, 2023, Defendant Eugene Welders Supply (doing business as National Extinguisher Service) caused water damage at the BLM's Horning Orchard location in Colton, Oregon. (Compl. ¶ 2.) 911 Restoration was called and provided emergency mitigation services to prevent additional water damage. (*Id.*)

911 Restoration alleges that a representative of Eugene Welders Supply instructed BLM to contact a restoration company when the damage occurred and represented that Eugene Welders Supply "would take care of the cost of the damage it had caused." (*Id.*; *see also* Decl. Robert B. Coleman Supp. Opp'n Mot. Dismiss ("Coleman Decl."), Ex. 2 at 10, Griese stated in an email: "Joe Knighten [Eugene Welders Supply's representative] while on site (8/22/2023) instructed BLM to call any cleaning/restoration company and National Extinguisher or their insurance company would take care of it all. Wednesday 8/23/2032 both companies (National Extinguisher Joe Knighton and 911 Restoration, Josiah Crocker) were on site and agreed for 911 Restoration to proceed with clean up.", ECF No. 22.)

On the same date, 911 Restoration entered into a written service agreement which Griese, BLM's Reforestation Services Supervisory Forester, signed as the "customer." (Compl. ¶ 3; Decl. Jeannette Friese Supp. Mot. Dismiss ("Griese Decl.") ¶ 1, Ex. A, ECF No. 14; Decl. Jared Nichol Supp. Mot. Dismiss ("Nichol Decl.") ¶ 4, ECF No. 15.) The service agreement listed the parties as 911 Restoration and "Lisa Bond c/o BLM," included a $25,000 estimated cost for services, and noted "[i]nvoice to be sent to National Extinguisher Service[.]" (Griese Decl., Ex. A, attaching service agreement; Coleman Decl. Ex. 1, attaching same agreement).

///

PAGE 2 – OPINION AND ORDER

Following completion of its work, 911 Restoration submitted a $49,184.83 invoice to both BLM and Eugene Welders Supply but neither paid the bill. (Compl. ¶¶ 5-6.) When 911 Restoration contacted Eugene Welders Supply's insurance company, Admiral Insurance Group, about payment, Claims Superintendent Karen Morgan-Bilocur responded, "you should be speaking with BLM not Eugene Welders" and "[y]ou need to contact BLM regarding your agreement with them." (Coleman Decl. Ex. 2 at 11.)

When 911 Restoration contacted BLM to inquire about payment, BLM representatives informed 911 Restoration that Griese was not "a warranted Contracting Officer" for BLM and "no binding contract for services was made between BLM officials and [911 Restoration.]" (Coleman Decl. Ex. 2 at 5, 32.) Nevertheless, BLM and Griese now assert that when Griese signed the agreement, "she was acting in her official capacity and within the scope of her employment with [BLM]." (Nichol Decl. ¶ 4; *see also* Griese Decl. ¶ 3, "I signed the Service Agreement on behalf of [BLM].")

## DISCUSSION

I.    **APPLICABLE LAW**

Rule 12(b)(1) authorizes motions to dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

"Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing

PAGE 3 – OPINION AND ORDER

subject matter jurisdiction." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). "At that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.* (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

## II.      ANALYSIS

Griese moves to dismiss Restoration 911's breach of contract and quantum meruit claims for lack of subject matter jurisdiction on the ground that she was acting in her official capacity and within the scope of her employment with BLM when she signed the contract and therefore the Contract Disputes Act ("CDA") and the Tucker Act govern Restoration 911's claims and this Court lacks subject matter jurisdiction. (Mot. Dismiss at 6-9.)

Restoration 911 responds that Griese's argument is inconsistent with BLM's position that Griese lacked authority to sign the service agreement on behalf of BLM. (Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 1-5, ECF No. 21.) In reply, Griese argues that whether she was authorized to enter into the agreement on behalf of BLM is distinct from whether she was acting within the scope of her employment when she signed the agreement. (Def. Griese's Reply Supp. Mot. Dismiss at 3, ECF No. 23.)

The Oregon Supreme Court has outlined three requirements to evaluate whether an employee acted within the scope of her employment: "(1) whether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform." *Chesterman v. Barmon*, 753 P.2d 404, 406 (Or. 1988) (citations omitted).

911 Restoration does not dispute that Griese was acting within the scope of her BLM employment when she signed the service agreement, but argues that if so, BLM must admit that

PAGE 4 – OPINION AND ORDER

there is a binding agreement between Restoration 911 and BLM. (*See* Pl.'s Opp'n at 2-5.) Although the Court understands 911 Restoration's frustration with Griese's litigation position, Griese is correct that "[u]nauthorized or forbidden acts can be within the scope of employment if the act could be expected when viewed in light of the employee's duties and if the employee committed the act in connection with the performance of work duties." *McMellon v. Safeway Stores, Inc.*, 945 F. Supp. 1402, 1409 (D. Or. 1996) (citing *Mains v. II Morrow, Inc.*, 877 P.2d 88 (Or. Ct. App. 1994)); *cf. Coney v. Cynthia Fagan Landa S Inc.*, 97 P.3d 1252, 1256 (Or. Ct. App. 2004) (finding that "[a]lthough [the defendant employee] was not authorized to make defamatory statements as part of her employment, she was expected to make [the type of] statements" she made as part of her job duties). Thus, Griese's position that she was not authorized to enter into the service agreement is not inconsistent with her position that she signed the service agreement within the scope of her BLM employment.

911 Restoration does not dispute that Griese signed the service agreement while on duty at BLM, that Griese was motivated by a purpose to serve BLM, and that managing BLM's Horning Seed facility was the type of service that BLM hired Griese to perform as its Reforestation Services Supervisory Forester. *See Chesterman*, 753 P.2d at 406 (outlining "scope of employment" factors). Thus, 911 Restoration and Griese appear to agree that Griese was acting within the scope of her BLM employment when she signed the service agreement at issue. The Court agrees and, as a result, the Court must substitute the United States for Griese as the proper defendant. *See Underwood Livestock, Inc. v. Abbey*, 128 F. App'x 613, 614 (9th Cir. 2005) ("[T]he United States was correctly substituted for the BLM employees, and the action was properly removed and dismissed for failure to exhaust administrative remedies.").

///

PAGE 5 – OPINION AND ORDER

Once the Court substitutes the United States as the proper defendant, the CDA and the Tucker Act control and the Court lacks subject matter jurisdiction over 911 Restoration's claims against the United States. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1021-22 (9th Cir. 2023) (noting that the CDA "establishes an administrative system for disputes relating to federal procurement contracts [whereby f]ederal contractors can submit written claims to agency contracting officers, receive written decisions regarding their claims within a specified timeframe, and administratively appeal adverse decisions" and "waives sovereign immunity over actions 'arising under' that administrative system and vests exclusive jurisdiction over such claims in only two venues: (1) the Court of Federal Claims, and (2) agency boards of contract appeals" (first citing 28 U.S.C. § 1491(a)(2); then citing 41 U.S.C. § 7104(b)(1); then citing 41 U.S.C. §§ 7101-7109; and then citing 41 U.S.C. §§ 7104(a), 7105)); (*see also* Pl.'s Opp'n at 4-5, agreeing "that a contract between it and BLM [through] a BLM official acting within her authority is subject to the Tucker Act and the CDA").

Although 911 Restoration prefers that the Court first resolve whether there is a binding contract between 911 Restoration and BLM before the Court dismisses the claims against the United States, the Court does not have subject matter jurisdiction to reach the merits of those claims.[1] *See United Aeronautical Corp.* 80 F.4th at 1021 ("The district court dismissed for lack of subject-matter jurisdiction, concluding that the [CDA] precludes jurisdiction over [the

---

[1] Similarly, the Court does not have subject matter jurisdiction to address whether Restoration 911 exhausted its administrative remedies under the CDA. (*See* Mot. Dismiss at 6, "Plaintiff has not complied with the requirements of the CDA."; Pl.'s Opp'n at 2 n.1, "911 will not address whether it exhausted administrative remedies under the CDA, since that would be relevant only to jurisdiction in the U.S. Court of Federal Claims, as defendant's memorandum points out. Thus, the question only is relevant if the Court determines it does not have subject matter jurisdiction, at which time the Court would not have jurisdiction to determine exhaustion.").

plaintiff]'s action by vesting exclusive jurisdiction over federal-contractor disputes in the Court of Federal Claims. We affirm."); *Mendenhall v. Kusicko*, 857 F.2d 1378, 1379 (9th Cir. 1988) (holding that the plaintiff's contract claim against the U.S. Forest Service was subject to the CDA and affirming the district court's dismissal for lack of subject matter jurisdiction).

For these reasons, the Court grants Griese's motion to dismiss for lack of subject matter jurisdiction and dismisses Restoration 911's claims against Griese without prejudice.

## CONCLUSION

For the reasons stated, the Court GRANTS Griese's motion to dismiss (ECF No. 13), substitutes the United States for Griese as the appropriate defendant, and dismisses Restoration 911's claims against the United States without prejudice. Restoration 911 and Eugene Welders Supply shall confer regarding whether the Court should remand this case to Clackamas County Circuit Court and file a joint status report by August 18, 2026.

**IT IS SO ORDERED.**

DATED this 4th day of August, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 7 – OPINION AND ORDER